### THE EASTERN TEMPLE.
### ZANNARAS v. UNITED STATES.
#### No. 4223.

Circuit Court of Appeals, Fourth Circuit.

Jan. 13, 1938.

---

R. Arthur Jett, of Norfolk, Va. (Kelsey and Jett, of Norfolk, Va., on the brief), for appellant.

H. H. Holt, Jr., Asst. U. S. Atty., and Sterling Hutcheson, U. S. Atty., both of Norfolk, Va. (Sam E. Whitaker, Asst. Atty. Gen., Max O'Rell Truitt, Gen. Counsel, United States Maritime Commission, of Washington, D. C., and Paul D. Page, Jr., and William R. Fitch, both of Washington, D. C., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

In January, 1936, a libel was filed against the steamship Eastern Temple by one George E. Nickerson, a member of the crew of said vessel, to recover wages claimed to be due him and other seamen named in the libel. Both Constantine Philip Zannaras, the appellant, and United States of America, the appellee, as well as several other claimants, intervened in the suit. Appellant's claim amounted to $11,945.16 for wages from July 6, 1933, to January 21, 1936, at the rate of $400 per month, with the exception of a short period in the latter part of the year 1935, when the wage was claimed at $180 per month.

The vessel was sold at public auction by the United States marshal for the sum of $27,500, and the cause referred to a special master to ascertain the amounts of the various claims and their priorities. The special master filed his report holding that the appellant was entitled to the status of a seaman, but reduced the amount of wages from $400 per month, as claimed by him as chief engineer of the vessel, to $235 per month, and also holding that a mortgage claimed by the appellee was a valid preferred mortgage.

After a hearing on exceptions the judge below affirmed the report, but ordered the cause referred back to the special master to make further findings as to priorities of the wage claims of the appellant and one Tuason, another seaman, over the mortgage

of the appellee. By a supplementary report filed in July, 1936, the special master confirmed his original report as to the amount of the reasonable worth of appellant's services as chief engineer, and further held that the "one year rule" applied to appellant's claim for wages, thereby limiting the amount of his recovery to $2,756.26. On exceptions the judge of the District Court affirmed the report of the special master as to appellant's claim, and in February, 1937, a decree was entered to that effect. From this decree the appellant appealed.

The Eastern Temple was purchased from the United States in September, 1927, the purchase price being $95,000, part of which was paid in cash and the balance secured by the mortgage here in question. The amount secured by the mortgage had been reduced and amounted, in March, 1936, to $34,742.72. The vessel was purchased by High Seas Transportation, Inc., of which corporation the appellant was president from September, 1927, to December, 1932. The appellant also was chief engineer on the vessel from September, 1927, until this libel was filed. In addition to his duties as chief engineer on the vessel and president of High Seas Transportation, Inc., he also acted as port engineer and as repairman, installing machinery.

Appellant's brother J. P. Zannaras, invested money in the vessel and succeeded him as president of the owning company, although appellant did not know he was superseded as president, by his brother, until about December, 1935, and never resigned as president. Appellant and his brother borrowed money to apply on the purchase of the vessel and, when the contract to pay him $400 a month as chief engineer was made, it was understood that this high rate of pay was given him partly to compensate him for releasing any claim for back pay due him and for the performance of duties other than those of chief engineer.

In December, 1932, an agreement was reached between the officers, directors, and stockholders of High Seas Transportation, Inc., that from July 1, 1932, to July 1, 1934, both appellant and his brother should each receive salaries of $4,800 per year. Prior to this the appellant, while serving as president of the owning company and chief engineer of the vessel, agreed for part of the time that his wages would be 25 cents a month, doing this, so he testified, to help the company's financial condition. In November, 1935, while the Eastern Temple

was on time charter for a voyage to Cuba, the appellant signed articles as chief engineer at the rate of $180 per month. The wage of the master of the vessel was $180 per month, chief mate $115, and first assistant engineer $115.

High Seas Transportation, Inc., made annual financial statements to the appellee showing the indebtedness against the vessel. These statements included appellant's unpaid wages. In the statement filed for the year 1934, the last one filed, this amount was stated to be $7,396.18.

The mortgage held by the appellee was executed by the appellant as president and by the secretary of the purchasing corporation. The affidavit of good faith required by the Ship Mortgage Act 1920, U.S.C.A. title 46, § 922, was executed by the appellant and delivered, with the mortgage, to the collector of customs at New York for recordation, but only a copy of this affidavit was attached to the record of the mortgage in the Custom House.

Three questions are presented for consideration on this appeal: First, Is the claim of the appellant entitled to a preference over the mortgage? Second, Should the "one year rule" be enforced as against appellant's wage claim? Third, was the mortgage held by appellee a valid one?

As to the first point the special master held (and this holding was confirmed by the judge below) that appellant was entitled to a preference to the extent of a reasonable wage as chief engineer of the vessel, and to that extent had the status of a seaman and was a member of the crew. The special master, however, refused to allow the full amount of the claim of $400 per month and fixed, as a reasonable wage, for the appellant as chief engineer $235 per month.

■■ It is contended on behalf of the appellant that the agreed wage was $400 per month as chief engineer and could not be changed, but that in any event appellant should have been allowed $285 per month, the maximum wage for chief engineers on vessels of the class of the Eastern Temple.

Considering this question in the light of the evidence in the record and giving to the finding of the special master, confirmed by the judge, that weight to which it is entitled, we are of the opinion that the sum of $235 per month as chief engineer was a fair and reasonable wage for the appellant. The evidence shows that, in fixing appellant's wages at $400 per month, the officers of the purchasing company took into account other material considerations in addition to services as chief engineer. During all the period covered by appellant's claim he also served as port engineer, and as such he was not entitled to the preferred status of a seaman. There was a great discrepancy between appellant's wages and the wages of the other officers of the vessel, the master's wage being only $180 per month, and during the time the vessel was on charter for a foreign voyage appellant signed on as chief engineer at $180 per month, accepting that as fair pay when serving only as chief engineer. The finding of the special master was justified by the evidence and the allowance was liberal.

■ As to the second question, we are of the opinion that there is no justification for applying the one year rule to appellant's claim. "Seamen are the wards of the admiralty," and Congress has expressly provided that claims for wages of the crew of a vessel are entitled to the status of preferred maritime liens as against a valid mortgage. U.S.C.A. title 46, § 953. Nothing is said in the statute as to when a seaman holding such a claim must enforce it. "The doctrine of priority of seamen's wages is established beyond question." The Samuel Little, 2 Cir., 221 F. 308, 310, and cases there cited.

■ It is contended on behalf of the appellee, who unquestionably has the right to contest appellant's claim (The Portchester, 2 Cir., 56 F.2d 579; Gray v. Hopkins-Carter Hardware Co., 5 Cir., 32 F.2d 876), that the holding of the special master that the "one year rule" should apply because of appellant's delay in enforcing his claim for wages long due was correct. We do not think so. It is true that laches has been held to invalidate stale claims for seamen's wages in certain cases cited on behalf of appellee, but it is also true that laches depends upon the circumstances of the individual case and applies only where the rights of innocent third parties are involved. The Norfolk, Fed.Cas. No. 10,297. We are of the opinion that the facts here proven will not justify the application of the doctrine of laches. It is especially significant that the appellee, the only party contesting appellant's claim, received annual reports that showed the back wages due appellant and made no protest. Neither did the appellee take any steps to enforce its mortgage until long after it was due, knowing of the condition that existed as to appellant's claim.

Under these circumstances appellee cannot now be heard to complain of appellant's delay in collecting his wages as chief engineer of the vessel. The appellant should be given a priority for the entire time claimed but at the rate fixed by the special master.

█ As to the third question we are of the opinion that the provisions of the statute as to recordation of ship mortgages were complied with. The Ship Mortgage Act 1920, U.S.C.A. title 46, § 922(a)(3) provides that an affidavit of good faith must be filed with the record of the mortgage. It is contended on behalf of the appellant that the mortgage was invalid because, after the delivery of a proper affidavit with the mortgage to the collector of customs of New York, it was not left permanently with the collector, but in lieu thereof a copy which substantially conformed to the original was deposited. This was a sufficient compliance with the provisions of the statute as to the recordation of mortgages, U.S.C.A. title 46, § 922, and the mortgage was valid.

█ The question of the validity of the mortgage in no way affects the claim of the appellant for his wages as chief engineer at the rate fixed by the decree of the court below, as that claim has priority over the valid mortgage.

For the reasons stated, the decree is modified, and the cause remanded to the court below, with instructions to enter a decree in accordance with this opinion.

Modified.